# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

RONALD RAY BRESHEARS,
ADC #132771                                                                                          PLAINTIFF

v.                                               4:22CV00060-LPR-JTK

RODNEY WRIGHT, et al.                                                                             DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky.  Any party may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I.   Introduction

Ronald Ray Breshears ("Plaintiff") was incarcerated at the Saline County Detention Center at the time Plaintiff filed this action.  Plaintiff has since been released.  (Doc. No. 61).  Plaintiff sued Saline County Sheriff Rodney Wright, Lieutenant Wade Gilliam, and Sergeants Tonya Parker and Christie Griffin (collectively, "Defendants") under 42 U.S.C. § 1983 in their personal and official capacities.  (Doc. No. 2 at 1-2).

Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 65-67).  On May 5, 2023, the Court directed Plaintiff to respond to Defendants' Motion within thirty (30) days, or by June 4, 2023.  (Doc. No.

68).  Plaintiff then filed two Motions for an extension of time of time in which to respond to Defendants' Motion for Summary Judgment.  (Doc. Nos. 71, 73).  The Court granted both Motions.  (Doc. Nos. 72, 74).  Plaintiff filed his Response on July 24, 2023.  (Doc. Nos. 75,76, 78, 79).

After careful consideration of the record before me, and for the reasons explained below, I recommend Defendants' Motion (Doc. No. 65) be granted.

## II.     Plaintiff's Pending Claims

In his Complaint, Plaintiff alleged insufficient Covid-19 precautions constituting deliberate indifference to serious medical needs, as well as making conditions of confinement claims.  (Doc. No. 2).  Plaintiff alleged that upon being booked into the Detention Center on October 10, 2021, he advised staff that he was from an area in which Covid-19 infection was rampant, and that he did not feel well.  (Id. at 4).  He said he had been ill since arriving at the Detention Center, and was denied medical help.  (Id. at 5).  Plaintiff also explained that he "had chronic illness that make[s] [him] submissable [sic] to the Covid-19 virus," such as seizures, chronic asthma, hepatitis C, and hypoglycemia, among others.  (Id. 4, 5).  Plaintiff said that when he was booked in to the Detention Center, his face mask was taken away from him and he was moved immediately into general population without quarantine or Covid-19 testing.  (Id.).  Plaintiff also claimed that at booking, Detention Center staff did not wear masks, wash hands, or wear beard nets while serving meals.  (Id.).  According to Plaintiff, Detention Center staff tested Covid-19 positive, but the inmates who had been in contact with those staff members were not tested and were left in general population.  (Doc. No. 2 at 4).

As set clarified in a June 7, 2022 Order, Plaintiff's remaining claims in this case are:

1) Plaintiff's deliberate indifference to serious medical needs claims against Defendants Wright and Parker as set out in Plaintiff's January 13, 2021 grievance;[1]

2) Plaintiff's deliberate indifference to serious medical needs claims against all Defendants regarding Covid-19 and the new strain as set out in Plaintiff's November 2, 2021[2] and December 31, 2021[3] grievances; and

3) Plaintiff's conditions of confinement claim regarding lack of face masks for staff and inmates, officers not wearing masks and gloves while serving food, lack of quarantine

---

[1] That grievance reads:

> I have been telling medical all day that the symptoms of my positive Covid test results are back and twice as strong as before[.] I have noted breathing problems that Covid make worse and I have a history of lung infections and when I tell staff they keep telling me I can't have any medication for my symptoms and to put in a sick call[.] This virus is deadly and the staff at the jail are the ones who brought it in from inmates off the street who are only here for a couple of days and bonded out[.] They are non violent offenders just like me but I have to set here and suffer through this s**t with no meds[.] If I was at home I could protect myself but this money hungry jail keep bringing people in above the jail capacity especially with Covid in two cell blocks.

(Doc. No. 20-2 at 1).

[2] The November 2, 2021 grievance asked about the symptoms of the new strain of Covid-19.  (Doc. No. 30-2 at 126).

[3] One December 31, 2021 grievance asked for current CDC guidelines for staff and inmates.  (Doc. No. 30-2 at 47).  The other reads:

> I have respiratory problems with breathing, hep c, and low blood sugar problems that put me at extreme risk for contacting the Covid-19 virus and nothing is being done to help eliminate those risk.  Staff has a federal mandate requiring them to wear face mask and to have sanitary living conditions and they are not following CDC guidelines this puts my life in jeopardy and I want something done about it. I am already sick along with half the barracks.

(Id. at 48).

procedures, insufficient CDC guideline compliance, and unsanitary living conditions against all Defendants as set out in Plaintiff's December 1, 2021[4] and two December 31, 2021 grievances. (Doc. No. 38 at 2).

## III. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

---

[4] The December 1, 2021 grievance reads:

> Why is in that the officers who come in and out of the jail don't wear masks or gloves when serving food[?] [T]hat is the best way to transfer covid[.] [W]e don't have nor provided with face mask and there is no [quarantine] on anyone who is coming in from the street.

(Doc. No. 30-2 at 87.).

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Rule 56.1, Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas.  Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

### IV. Analysis

As mentioned above, Plaintiff alleged deliberate indifference to serious medical needs, as well as making conditions of confinement claims.  Defendants maintain they are entitled to qualified immunity and seek summary judgment in their favor.  (Doc. No. 66).

#### A. Qualified Immunity

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity.  (Doc. No. 66 at 18).  Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most

favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[5] "'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." Id. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful—in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

    **B.**    **Personal Capacity Claims—Deliberate Indifference to Serious Medical Needs**

Plaintiff was housed at the Saline County Detention Center at the times relevant to his claims in this action. (Doc. No. 2 at 3). Plaintiff explained that at the time of the alleged incidents giving rise to this lawsuit, he was in jail and still awaiting trial on pending criminal charges. (Id.). As such, Plaintiff was pretrial detainee at the time of the events giving rise to his

---

[5] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

claims. As a pretrial detainee, Plaintiff's deliberate indifference to serious medical needs claims are analyzed under the Fourteenth Amendment.

Prison officials violate a pretrial detainee's rights under the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to his serious medical needs. Ivey v. Audrain County, Missouri, 968 F.3d 845, 848 (8th Cir. 2020). To succeed on a claim of deliberate indifference to a medical need, a pretrial detainee plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Id. "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "Mere negligence or medical malpractice . . . are not sufficient to rise to a constitutional violation." Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). As such, allegations involving negligence or medical malpractice do not state a § 1983 claim on which relief may be granted.

\*\*\*

Defendants argue that Plaintiff cannot establish deliberate indifference. (Doc. No. 66). Plaintiff was booked into the Detention Center on October 10, 2021. (Doc. No. 67 at ¶ 4; Doc. No. 2 at 4). According to Defendants, the Detention Center had Covid-19-related policies and procedures in place that aimed to protect inmates against the virus. (Doc. No. 67 at ¶¶ 1-8; Doc. No. 65-2; Doc. No. 65-3; Doc. No. 65-4; Doc. No. 65-5; 65-9). For example, at the time Plaintiff was booked into the Detention Center, an Inmate Housing and Isolation Plan was in effect; Defendants maintain that Plan remains in effect to date. (Doc. No. 67 at ¶ 3). Plaintiff disagrees that any policies were followed. (Doc. No. 75-1 at ¶¶ 5, 6, 7; Doc. No. 76 at ¶¶ 1, 2, 3, 5).

The Detention Center contracts with TurnKey for medical services for inmates. (Doc. No. 67 at ¶ 10). At intake, Plaintiff had a medical intake evaluation performed by TurnKey staff. (Doc. No. 67 at ¶ 10; Doc. No. 65-7; Doc. No. 65-8; Doc. No. 65-9; Doc. No. 65-10). Defendants assert that Plaintiff tested Covid-19 positive. (Doc. No. 67 at ¶ 4; Doc. No. 65-9 at 1). Plaintiff contests this fact. (Doc. No. 75-1 at ¶ 10; Doc. No. 76 at ¶ 4). Plaintiff asserts he only said he was not feeling well. (Doc. No. 75-1 at ¶ 10; Doc. No. 65-9). Plaintiff says the first time he was tested for Covid-19 was on January 12, 2022. (Doc. No. 75-1 at ¶ 17; Doc. No. 65-12 at 55).

According to Defendants, because Plaintiff tested Covid-19 positive, he was placed in quarantine and remained there for 14 days. (Doc. No. 67 at ¶ 6). Plaintiff contests that he initially was placed in quarantine. (Doc. No. 75-1 at ¶ 11; Doc. No. 67 at ¶ 6). Instead, Plaintiff says he was placed immediately in general population in the H Pod. (Doc. No. 75-1 at ¶¶ 11, 16; Doc. No. 65-10 at 2; Doc. No. 65-6 at 3; Doc. No. 67 at ¶ 6). To support his position, Plaintiff points to TurnKey's intake evaluations designating him for general population, and Detention Center policy explaining that H Pod "will be utilized only for male inmates with negative test results and/or no symptoms of illness." (Doc. No. 65-11 at 2; Doc. No. 65-2). The Defendants explained that "some of the pod classifications . . . changed as required by practicalities." (Doc. No. 67 at ¶ 3). Plaintiff did not contest that assertion.

Defendants maintain that during the time of Plaintiff's incarceration, Covid-19 vaccines and boosters were offered to inmates and staff. (Doc. No. 67 at ¶ 7; Doc. No. 65-5 at 23, 27, 28, 30, 31). Plaintiff says he signed up for the vaccine, but never received it. (Doc. No. 75-1 at ¶ 14; Doc. No. 67 at ¶ 7). Until vaccination was available, the Detention Center required that masks be worn. (Doc. No. 67 at ¶ 8). Plaintiff maintains that no masks were made available. (Doc.

No. 75-1 at ¶ 15). According to Detention Center policy, if an individual was vaccinated, masks were optional. (Doc. No. 67 at ¶ 8).

Defendants explain that the Detention Center's protocols were updated based on information from the CDC as the information became available. (Doc. No. 67 at ¶ 7). The Detention Center complies with jail standards, and passed State Inspection in 2021 and 2022. (Doc. No. 67 at ¶ 9; Doc. No. 65-13; Doc. No. 65-14). Again, Plaintiff maintains that no protocols were observed. (Doc. No. 75-1 at ¶¶ 5, 6, 7).

Plaintiff's medical records are attached as an exhibit to Defendants' Motion. (Doc. No. 65-12). Plaintiff does not contest the authenticity or accuracy of the records.

***

Plaintiff alleges that he was at increased risk of serious Covid-19 illness due to his underlying conditions.

For the purpose of this Recommendation, the Court assumes, without finding, that Plaintiff's suffered from medical conditions that put him an increased risk for serious Covid-19 disease and that Defendants were aware of the increased risk.

Plaintiff vehemently contests that the Detention Center followed any Covid-19 protocol or policy to protect him. Plaintiff relies on his earlier Response to Defendants' Motion for Summary Judgment (Doc. No. 25) in support of his position that no policy or protocol was followed. (Doc. No. 75-1 at ¶ 6). Plaintiff specifically refers to the Court to the witness statements in that document. (Id.). The witness statements, however, at least to some extent undercut Plaintiff's allegations that the Detention Center followed no Covid-19 policy or protocol. For example, Plaintiff alleges Detention Center staff did not wear gloves while serving meals. But one witness statement on which Plaintiff relies provides that guards wore gloves, though they did not change

the gloves while serving food.  (Doc. No. 25 at 8).  Other statements reflect that the Detention Center distributed masks to some inmates and guards.  (Id. at 9, 10, 22).  Further, Plaintiff underwent Covid-19 screening upon intake at the Detention Center.  (Doc. No. 65-9).  The Court notes that violation of Detention Center Covid-19 policy or protocol does not automatically rise to the level of deliberate indifference.  Davis v. Buchanan Cnty., Missouri, 11 F.4th 604, 629 (8th Cir. 2021), cert. denied sub nom. Munger v. Davis, 211 L. Ed. 2d 485, 142 S. Ct. 777 (2022); Watkins v. Missouri Dep't of Corr., No. 2:21-CV-04166-NKL, 2022 WL 3039386, at *5-6 (W.D. Mo. Aug. 1, 2022) (collecting cases).  See also Amen El v. Schnell, No. 20-CV-1327 (DSD/ECW), 2022 WL 1110981, at *16-17 (D. Minn. Jan. 31, 2022), report and recommendation adopted, No. CV 20-1327(DSD/ECW), 2022 WL 766402 (D. Minn. Mar. 14, 2022), aff'd, No. 22-2115, 2022 WL 17228817 (8th Cir. July 29, 2022) (collecting cases demonstrating that difficulties inherent in implementing and enforcing Covid-19 precautionary measures unlikely to support finding of deliberate indifference).

More significantly, when considering how a plaintiff may establish deliberate indifference, Plaintiff has not chinned the bar.  The Court of Appeals for the Eighth Circuit has explained that "[d]eliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs."  Dulany, 132 F.3d at 1239.

In his January 13, 2021 grievance, Plaintiff noted that he "has a history of lung infections and when [he] [told] staff they [kept] telling [Plaintiff that he] can't have any medication for [his] symptoms and to put in a sick call.  (Doc. No. 20-2 at 1).  Plaintiff did not identify the staff in the grievance.  And the staff he told did not react with deliberate indifference, rather, they instructed Plaintiff to put in a sick call.

10

While Plaintiff exhausted his January 13, 2021 grievance as to Defendants Wright and Parker, Plaintiff's Complaint did not contain any specific allegations of individual conduct against these Defendants—neither did the grievance. (Doc. No. 2 at 4-5). In his Complaint, as in his grievance, Plaintiff alleged his was not receiving treatment/medication. Plaintiff did not explain in his pleading how Defendant Wright or Defendant Parker acted with deliberate indifference to Plaintiff's serious medical needs. Further, Plaintiff has not alleged that any Defendant was a medical professional that could prescribe medication. Plaintiff also has not alleged that any Defendant withheld already-prescribed medication. On the contrary, Plaintiff did not dispute that he was allowed to keep his albuterol inhaler on his person as of December 4, 2022. (Doc. No. 67 at ¶ 11; Doc. No. 65-12 at 106). In short, nothing in the record indicates that any Defendant was deliberately indifferent to Plaintiff's serious medical needs. Compare Watkins, No. 2:21-CV-04166-NKL, 2022 WL 3039386, at *6 (recognizing claim for deliberate indifference where defendants "were subjectively aware of the serious medical risks posed by COVID, especially to someone with [the plaintiff's] comorbidities, and . . . these defendants knew specific treatments and medications could address the serious risks buts denied the plaintiff those treatments and medications).

Considering the record before me, no reasonable jury could conclude that any Defendant was deliberately indifferent to Plaintiff's serious medical needs. As such, Defendants are entitled to qualified immunity on Plaintiff's deliberate indifference to serious medical needs claims.

### C. Personal Capacity Claims—Conditions of Confinement

Plaintiff's challenges the conditions of his confinement. A pretrial detainee's conditions of confinement claim is governed by the standard set out by the United States Supreme Court in Bell v. Wolfish. 441 U.S. 520 (1979). Stearns v. Inmate Services Corp., 957 F.3d 902, 907 (8th

Cir. 2020). As announced in Bell, pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment from conditions of confinement that amount to punishment. 441 U.S. at 535. Conditions amount to punishment under Bell if the conditions are intentionally punitive, were not reasonably related to a legitimate governmental purpose, or were excessive in relation to that purpose. Stearns, 957 F.3d at 907. Mere negligence is insufficient to support a claim under Bell. Id. at 908 n.5.

In his Complaint, Plaintiff claimed that at booking, Detention Center staff did not wear masks, wash hands, or wear beard nets while serving meals. (Doc. No. 2 at 4). According to Plaintiff, Detention Center staff tested Covid-19 positive, but the inmates who had been in contact with those staff members were not tested and were left in general population. (Id.).

The contested and uncontested facts regarding this claim are the same as those set out in connection with Plaintiff's deliberate indifference to serious medical needs claim.

When Covid-19 began spreading quickly in early 2020, very little was understood about the virus. There was a steep learning curve regarding prevention and treatment. And as knowledge about Covid-19 grew, the virus mutated and changed. The dynamic nature of the pandemic is visible even in Plaintiff's grievances in which he seeks information about the new Covid-19 strain.

Despite Plaintiff's allegations, the Detention Center did have some Covid-19 protocol and practice in place. (See Doc. No. 65-2; Doc. No. 65-4; Doc. No. 65-5). For example, Plaintiff underwent Covid-19 screening upon intake. (Doc. No. 65-9). And it appears there was a Covid-19 screening log. (Doc. No. 65-5 at 1). Inmates were tested, at least at times. (Id. at 2, 7, 9, 11, 13, 15, 17, 19). Detention Center workers were tested, and the record reflects those around the workers were also tested. (Id. at 21, 33). Vaccinations and boosters were offered to staff and

inmates.  (Id. at 23, 27, 30, 31).  The Detention Center was aware of different Covid-19 variants. (Id. at 32).  And there were days during the relevant period during which the Detention Center had no active Covid-19 cases: September 15, 2020; September 28, 2020; October 13, 2020; October 26, 2020; November 2, 2020; November 16, 2020; December 14, 2020  (Id. at 7, 9, 11, 13, 15; 17, 19).

Plaintiff's Complaint did not explain how any Defendant allegedly disregarded the protocols or policies that existed.  Neither did Plaintiff's grievances.  Similarly, Plaintiff's Response to Defendants' Motion did not outline specific acts or omissions by any Defendant. Plaintiff has not come forward with evidence as to how any named Defendant subjected him to conditions that amounted to punishment—that is, conditions that were intentionally punitive, not reasonably related to a legitimate governmental purpose, or excessive in relation to that purpose. Stearns, 957 F.3d at 907.  As such, no reasonable jury could find that any Defendant violated Plaintiff's rights through the conditions of his confinement.  Plaintiff failed to establish that a violation occurred.

The Court is sympathetic to Plaintiff's allegations that protocol and policy were not followed.  But even assuming that a conditions of confinement violation occurred, the Court again is not aware of any law clearly established at the time of the alleged violation that would have put any Defendant on notice that his or her conduct was unlawful.  On the contrary, courts in the Eighth Circuit have repeatedly found qualified immunity applicable in conditions of confinement claims based on Covid-19 precautions.  See, for example, Harmon v. Harris, No. 4:22-CV-00716-BRW-ERE, 2023 WL 1767578, at *3 (E.D. Ark. Jan. 10, 2023), report and recommendation adopted, No. 4:22-CV-00716-BRW-ERE, 2023 WL 1766482 (E.D. Ark. Feb. 3, 2023) (aff'd on appeal May 15, 2023) (finding qualified immunity on Covid-related conditions of

confinement claim) (and cases cited therein). The Court finds the reasoning in cases affording qualified immunity applicable here. Defendants are entitled to qualified immunity Plaintiff's conditions of confinement claim.

To the extent Plaintiff based his claim on the lack of beard nets—or any other non-Covid related claim—Plaintiff has not come forward with evidence that the condition amounted to punishment. Defendants are entitled to qualified immunity on those claims, as well.

### D.    Official Capacity Claims

Plaintiff sued Defendants in their official and personal capacities. Plaintiff has not established any violation by a named Defendant in his or her personal capacity. As a result, Plaintiff's official capacity claims also fail. See Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 674 (8th Cir. 2007) (internal citation omitted).

## V.    Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 65) be GRANTED;

2.    Plaintiff's remaining claims be DISMISSED with prejudice; and

3.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

Dated this 31st day of July, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE